[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] Memorandum of Decision on Motion to Dismiss
In this case the plaintiffs sued the defendant as a result of alleged injuries arising out of an accident that occurred on December 29, 1995. Service was made on January 27, 1998. On February 20, 1998, the defendant served an apportionment CT Page 9772 complaint on the Commissioner of Transportation relying on §13a-144 of the general statutes. The commissioner has now brought a motion to dismiss the apportionment complaint on the basis of sovereign immunity.
The commissioner bases his motion on three grounds (1) Appropriate notice was not given to the commissioner as provided for in § 13a-144 and the complaint does not allege notice (2) Section 52-102(b)(c) provides that no person immune from liability shall be made an apportionment defendant and their liability may not be considered for apportionment purposes under § 52-572(h)(3) Under § 52-572h a party can be brought into a case for apportionment basis only if the basis of the apportionment complaint lies in Negligence, here the apportionment complaint is based on § 13a-144.
(1)
The court will first analyze the issues raised by this case based on the assumption that traditional notions of sovereign immunity apply and that the waiver of that doctrine provided for by § 13a-144 of the general statutes and the prerequisites for such a waiver apply to an analysis of an apportionment claim against the state. It certainly can be flatly said that the State is immune from suit unless it waives its immunity. It has done so in § 13a-144 but the terms of that statute must be strictly complied with if suit is to be brought. The notice requirement set forth in the statute "is a condition precedent which, if not met, will prevent the destruction of sovereign immunity." Lussierv. Dept. of Transportation, 228 Conn. 343, 354 (1994). In Amorev. Frankel, 228 Conn. 358, 364 (1994) the court said that "the doctrine of sovereign immunity, implicates subject matter jurisdiction and is therefore a basis for granting a motion to dismiss."
There is no allegation in the complaint that notice was served on the commissioner within the statutory prescribed period as set forth in § 13a-144. In its brief opposing the motion to dismiss the defendant does not contest the fact that he did not give statutory notice but as will be discussed shortly claims that to grant the motion on the basis of failure to give notice under the circumstances of this case would violate his right to equal protection of the law. The court will take it as established for the purposes of this motion that no notice was in fact given as opposed to a situation where the complaint merely CT Page 9773 failed to reflect the fact that notice was given.
As noted in opposing the motion to strike the defendant makes an equal protection argument. He cites the language ofRyszkiewicz v. New Britain, 193 Conn. 589, 595 (1984) which states that "once the legislative body abolishes sovereign or governmental immunity, it must do so in a way that comports with federal and state constitutional guarantees of equal protection." The defendant asserts it is not treated like other similarly situated defendants who can apportion liability. Here the state may be partially responsible but because the plaintiff chose not to file notice of injury with the state the apportionment defendant cannot take advantage of a statute available to all others.
If any other party in addition to the defendant were responsible for injuries to a plaintiff, the plaintiff could wait up to two years to bring suit and the defendant could file an apportionment complaint against the other responsible party. If the "other party" is the state and the plaintiff for reasons of its own waits beyond the notice requirement of § 13a-144 to bring suit against the defendant, the defendant will not be able to bring in the state for apportionment purposes even though the state may be in part responsible for the accident.
An easy answer to this is to say that nothing in § 13a-144
would preclude a prospective defendant, not yet sued that is, from giving the appropriate statutory notice. This may be too easy an answer because in many instances such a person would not be able to specify the injuries suffered which would defeat adequate notice. Also not having been sued yet it is perhaps unfair and unrealistic to expect a party to notify a prospective apportionment defendant based on an analysis of a case not even begun by the plaintiff. But, query, wouldn't the equal protection argument be better focused if all the notice that could be given had been given absent description of injury if that was not reasonably available?
In any event for equal protection purposes § 13a-144 does "not touch upon a fundamental right or a suspect class"Ryszkiewicz v. New Britain, 193 Conn. 589, 597 (1984). Therefore as that court noted a governmental immunity statute such as this is governed by the "rational basis test" — is the classification "rationally related to some legitimate government purpose," id page 597. CT Page 9774
It is true that it has been said that the notice provision of § 13a-144 has the purpose of furnishing the commissioner "with such information as (will) enable him [sic] to make a timely investigation of the facts upon which a claim for damages(is) being made, LoRusso v. Hill, 139 Conn. 554, 557 (1953), (emphasis added), Lussier v, Dept. of Transportation, 228 Conn. at page 354. But an apportionment defendant has a perfect right to enter a case and contest the appropriate percentage of liability attributable to it despite the fact that it is not subject to a damage claim. The state has certainly entered this case and vigorously pressed its motion to dismiss by way of two briefs and oral argument. Given that right, the court cannot say that the statutorily required notice within the prescribed statutory time frame would not have assisted the commissioner in determining the appropriate percentage of liability attributable to the state, if any, just as it would assist the state where a damage claim is being made. The court does not accept the equal protection argument as a bar to this motion and will now discuss the second ground on which this motion is based.
(2)
The foregoing discussion, however, precedes on the assumption that traditional notions of sovereign immunity apply in the apportionment context. In other words, an apportionment claim is being made against the state, there is no claim being made for money damages. Does this truly implicate the doctrine of sovereign immunity so that the state can now rely upon it for the purposes of having the apportionment claim thrown out?
The traditional and modern reasoning behind this doctrine is set forth in 72 Am.Jur.2d, States Etc., § 99 at page 491:
 The doctrine of sovereign immunity from suit, rooted in the ancient common law, was originally based on the monarchial, semireligious tenet that "the King can do no wrong." In modern times, it is more often explained as a rule of social policy, which protects the state from burdensome interference with the performance of its governmental functions and preserves its control over state funds, property, and instrumentalities. The public service might be hindered and the public safety endangered if the supreme authority could be subjected to suit at the instance of every citizen, and consequently controlled in the use and disposition of the means required for the proper CT Page 9775 administration of the government.
The modern notion behind the doctrine expresses a concern that state funds, property or operations be protected from private civil suits.
Speaking of the doctrine an early case said the doctrine meant that: "The state cannot be sued, and therefore cannot be compelled to pay under any circumstances", State of Connecticutv. City of Hartford, 50 Conn. 89, 90 (1882). In this case an apportionment action would not compel the state to pay anything or suffer any infringement of its operations. How can it be said that allowing such a suit to proceed would permit sovereignty to be "narrowed or destroyed" or would result in "creating a claim against the state," Spring v. Constantino 168 Conn. 563, 570-571
(1975)?
It could be said, however, that since an apportionment defendant is a party for all purposes, including all purposes under section 52-572h, see § 52-102b(a) then the fact that the state can be made an apportionment defendant even if no claim for damages is made against it and can presumably contest even under such circumstances the portion of liability appropriately ascribed to it then, in that sense, the state is, subject to suit and at least faces the choice of expending state resources to contest the issue of proper apportionment.
That appears to be a fairly shaky substructure on which to erect a sovereign immunity argument that would bar an apportionment claim against the state. But the real problem in allowing the claim is perhaps more of a strictly procedural one. Here there is no question that the plaintiff could have decided to bring the state into this suit; the very basis of the apportionment claim rests on the supposition that the state's negligence proximately caused injury and damages to the plaintiff.
However, the sole vehicle for utilizing the apportionment rules of § 52-572(h) is the procedural mechanism of §52-102(b)(c) of the statutes. That statute states that no person "immune from liability" may be brought into a case for apportionment purposes. No notice was given here and as previously discussed the notice requirement under § 13a-144
is a condition precedent which, if it is not met will prevent the destruction of sovereign immunity. Lussier v. Dept. ofCT Page 9776Transportation, supra.[1] The court concludes that this second ground also supports the granting of the motion to dismiss — the state is immune from suit therefore the state cannot be brought in for apportionment purposes under § 52-102(b)(c).
(3)
There is another basis on which the motion to dismiss may be granted. Section 52-572(h) appears to apply only where the apportionment claim is based on a theory of common law negligence. Paul v. McPhee Electrical Contractors,46 Conn. App. 18, 21-22 (1997). Section 52-572h(c) talks explicitly in terms of a "negligence action." It is true that §13a-144 refers to a neglect standard in the actual application of that statute, cf Lipwich v. Frankel, 44 Conn. App. 651,654 (1997). But the basis of the assertion of liability rests on the statute not on common law negligence — at common law the state has immunity. Besides the statute does not in all respects mirror general common law principles. What in the common law suggests that an action must be brought in two years or notice must be given to the commissioner within ninety days of an accident?
In discussing this statute as early as 1936 the court said of the predecessors to §§ 13a-144 and 13a-149: "A cause of action under either of these statutes is not really one to recover damages for an injury arising from negligence but for breach of a statutory duty," Sherlock v. MacDonald, 121 Conn. 611, 613
(1936), McManus v. Jarvis, 128 Conn. 707, 710 (1942). In RapidMotor Lines Inc. v. Cox, 134 Conn. 235, 239 (1947) the court said of this statute: "the statute in question simply provides for an action on the statute to enforce a penalty and that therefore no rights not specifically bestowed by its terms should be created by implication." Besides as noted Paul v. McPhee ElectricalContractors supra, specifically held that an apportionment complaint cannot be based on a violation of the product liability act, §§ 52-572m et seq.; it had to be based on negligence. Just as § 13a-144 refers to neglect standards in its application so too the product liability act defines in §52-572(m)(b) product liability claims as all actions including but not limited to "Strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligence or innocent; misrepresentation or non disclosure whether negligent or innocent." Common law negligence is explicitly referenced but that did not prevent the court in Paul from ruling that since the CT Page 9777 statutory vehicle for bringing such a claim was the product liability act an apportionment complaint could not be based on it. Here too, negligence is referenced as a standard to be used in the application of § 13a-144 but an action under that statute is not one based on "negligence" for § 52-572h
purposes.
The motion to dismiss is granted.
Corradino, J.